# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MARK W. LEWIS,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

C.A. No. 18-200-LPS

Gary Linarducci, LINARDUCCI & BUTLER, New Castle, DE

Karl E. Osterhout, OSTERHOUT BERGER DISABILITY LAW, Oakmont, PA

    Attorneys for Plaintiff


David C. Weiss, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Wilmington, DE

Heather Benderson, Special Assistant United States Attorney, Eric P. Kressman, Regional Counsel, and Anne von Scheven, Assistant Regional Counsel, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, Philadelphia, PA

    Attorneys for Defendant

## MEMORANDUM OPINION

March 18, 2019
Wilmington, Delaware

STARK, U.S District Judge:

Plaintiff Mark A. Lewis ("Lewis" or "Plaintiff") appeals the decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his claim for Social Security Disability Insurance benefits. (D.I. 1) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Before the Court are the parties' cross-motions for summary judgment. (D.I. 9, 10) Plaintiff Lewis seeks reversal of the Commissioner's decision and remand to the Commissioner for what he contends would be proper consideration of the record. (D.I. 9-1 at 20) The Commissioner requests that the Court affirm the decision denying Lewis' claim for benefits. (D.I. 10)

For the reasons stated below, the Court will deny Lewis' motion for summary judgment and grant the Commissioner's motion.

**I.    PROCEDURAL BACKGROUND**

On December 3, 2013, Lewis filed an application for disability benefits, alleging disability beginning on November 15, 2012. (D.I. 6 ("Tr.") at 179) Lewis later amended his benefits period to close on January 15, 2015, following his recovery. (Tr. 39) Lewis' claim was denied initially on January 27, 2014, and upon reconsideration on August 6, 2014. (Tr. 83-107) On September 11, 2014, Lewis requested a hearing with an Administrative Law Judge ("ALJ"). (Tr. 122-23) The hearing took place on September 27, 2016. (Tr. 58-80)

After the hearing, on November 23, 2016, the ALJ issued the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 15, 2012 through the end of the closed period on January 15, 2015 (20 CFR 404.1571 *et seq.*).

1

3. Through the date last insured, the claimant had the following severe impairments: Bipolar Disorder, Depression (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple, routine tasks in a work environment free of fast paced production requirements involving simple work related decisions with few, if any, work place changes; and occasional interaction with the public and co-workers.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 2, 1961 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 15, 2012, the alleged onset date, through June 30, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 41-53)

Lewis requested review of this decision by the Appeals Council and was denied on November 30, 2017, making the ALJ's decision the final decision of the Commissioner. (Tr. 1) On February 2, 2018, Lewis filed the instant suit, seeking judicial review of the Commissioner's denial of benefits. (D.I. 1) The parties completed briefing (D.I. 9-1, 11, 12) on their cross-motions for summary judgment (D.I. 9, 10) for summary judgment on July 26, 2018.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### B. Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Third Circuit has explained that "a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

4

countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

### C. Social Security Benefits Appeals

The Social Security Act provides for the payment of benefits to indigent persons under the Social Security Income ("SSI") program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI (and for purposes of disability insurance benefits) as the inability to do any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I) (mandating finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which [the] individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity [(RFC)]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's

7

impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

## III. DISCUSSION

On appeal, Lewis raises two arguments: (1) the ALJ failed to place sufficient weight on medical opinion evidence from Dr. Jay Weisberg, Lewis' treating (specialist) psychiatrist, and so failed to properly determine Lewis' residual functional capacity; and (2) the ALJ failed to properly evaluate Lewis' credibility by "fail[ing] to acknowledge [Lewis'] strong work history." (D.I. 9-1 at 4) The Court addresses each argument in turn.

### A. Weight of Dr. Weisberg's Opinions

The ALJ is charged with the duty of evaluating medical opinions. *See* 20 C.F.R. § 404.1527. Generally, the opinions of a treating physician will be given more weight. *See id.* § 404.1527(c)(2). To receive "controlling weight," a treating physician's opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record. *Id.* § 404.1527(c)(2). If not given controlling weight, the ALJ is to evaluate the treating physician's opinion pursuant to the applicable regulatory factors, including the opinion's supportability and consistency with the record as a whole. *See* 20 C.F.R. § 404.1527.

The ALJ is not required to accept treating source opinions uncritically and may decline to assign significant weight to such an opinion when it conflicts with the record. *See Plummer*, 186 F.3d at 429. In addition, legal determinations, such as determinations that a claimant is "disabled" or "unable to work," are ultimately for the Commissioner to make and, therefore, when stated in a medical opinion will receive no "special significance." *See id.* § 404.1527(d).

In reviewing the ALJ's analysis, it is not for the Court to re-weigh the medical opinions in the record. *See Monsour*, 806 F.2d at 1190-91. Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.*

Lewis' treating physician, Dr. Weisberg, prepared a letter, dated December 16, 2013, regarding Lewis' condition at that time. (Tr. 307) The ALJ summarized[1] Dr. Weisberg's letter as follows:

> [Dr. Weisberg] stat[ed] that [Lewis] was under his care for treatment of depression, which was part of his Bipolar illness. [Dr. Weisberg] stated that over the years, [Lewis] had gone up and down with depression. [Dr. Weisberg] stated that [Lewis] typically became nonfunctional for several months but then had come out of his depression and started to function again. [Dr. Weisberg] stated that the past episode had lasted for a year. [Dr. Weisberg] stated that despite aggressive treatment [Lewis] has gone into financial ruin and his [ho]use is going to be foreclosed on. Despite aggressive treatment, [Lewis] remained depressed and non-functional. He stated that his prognosis was poor.

(*Id.* at 49-50) (internal citations omitted)

On June 14, 2016, Dr. Weisberg prepared a medical source statement, which opines on Lewis' condition as it existed between November 2012 and November 2014. (Tr. 548-53) The ALJ summarized[2] Dr. Weisberg's medical source statement as follows:

> [Lewis] had no useful ability to carry out short and simple instructions; maintain attention for two hour segment; maintain regular attention and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress; carry out detailed instructions; set realistic goals or make plans independently of others; and deal with

---

[1] The Court finds the ALJ's summary (to which Lewis does not appear to object) to be accurate.

[2] The Court finds the ALJ's summary (to which Lewis does not appear to object) to be accurate.

9

> stress of semiskilled or skilled work. [Dr. Weisberg] found that [Lewis] was seriously limited in the ability to remember work-like procedures, work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; interact appropriately with the general public; and maintain socially appropriate behavior. [Dr. Weisberg] stated that [Lewis] had poor ability to understand and remember detailed instructions; adhere to basic standards of neatness and cleanliness; travel in unfamiliar place[s]; and use public transportation.

(Tr. 49) (internal citations omitted)

The ALJ gave both Dr. Weisberg's letter and his medical source statement "little weight." (Tr. 49-50) The ALJ found that the limitations in Dr. Weisberg's medical source statement were "extreme and not consistent with the level of treatment and care administered," and found Dr. Weisberg's letter similarly "inconsistent with the physician's notes." (*Id.*) Specifically, the ALJ pointed out that although Lewis had "moderate to severe level of depression throughout the period at issue" and was prescribed certain medications, Lewis had no inpatient admissions and declined to pursue ECT treatment, MAOI medications, counseling, or treatment for sleep apnea. (*See id.* at 50; *see also* S.S.R. 16-3p ("We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating . . . symptom intensity . . . .")) The ALJ also observed that when Lewis was admitted to the hospital for chest pain, no doctor noted any abnormal behavior or even that a mental status examination was undertaken. (*Id.*) The ALJ reasoned that "[i]f the claimant was as severe as alleged and had such extreme limitations, it would follow that his other physicians would have noted the symptoms when completing the physical examination." (*Id.*)

The ALJ also found that Dr. Weisberg's letter and medical source statement were "inconsistent with the claimant's stated activities of daily living." (*Id.* at 49) In particular, the ALJ contrasted Dr. Weisberg's opinions with Lewis' statement on December 19, 2013 that he

10

"was able to engage in personal care, make simple meals and wash dishes," "[took] care of his dogs," "spent time with his wife and children," had "no difficulty getting along with others," had "no difficulty with authority figures," "was able to shop in stores with his wife," "was able to drive a car," and "was able to take his medications without reminders." (*Id.* at 50-51) The ALJ noted that Lewis' statement was made just three days after Dr. Weisberg's letter. (*Id.* at 51)

The ALJ also noted that Lewis' testimony that he could not get his thoughts together was inconsistent with Lewis' ability to drive a car, Lewis' ability to follow written instructions, and mental status examinations finding that Lewis had a fair ability to attend and concentrate. (*Id.*)

Lewis contends that the ALJ erred in assigning Dr. Weisberg's opinions "little weight" (D.I. 9-1 at 10) and contends that Dr. Weisberg's opinions should instead have been given "substantial weight" (*id.* at 5, 12; *see also* D.I. 12 at 1-2). He emphasizes: "Dr. Weisberg is a Board-Certified psychiatrist which generally entitled his opinion regarding Plaintiff's mental impairments to 'more weight,' as these are plainly issues 'related to his . . . area of specialty'." (D.I. 9-1 at 11) (quoting 20 C.F.R. § 404.1527(c)(5)) Lewis argues that Dr. Weisberg's opinions, when given their proper weight, compel a finding that Lewis was disabled. (D.I. 9-1 at 8) In the alternative, Lewis argues that even if Dr. Weisberg's opinions are partially credited – such that ***any*** additional limitations are added to the limitations the ALJ included in Lewis' RFC – remand would be necessary to allow a vocational expert to consider the effects of these additional limitations. (*Id.* at 8-9)

Having reviewed the record as a whole, the Court finds substantial evidence to support the ALJ's decision not to accord Dr. Weisberg's medical opinions "controlling weight," given the inconsistencies between his opinions and record evidence identified by the ALJ and described above. *See* 20 CFR § 404.1527(c)(2). The Court further concludes that, upon

11

considering these inconsistencies and the other relevant factors, substantial evidence supports the ALJ's decision to give the medical source statement "little weight." *See id.* § 404.1527(c)(2)-(6).

Lewis contends that the evidence relied upon by the ALJ does not relate to whether Lewis could sustain "regular and continuous work activity" for "8 hours a day, 5 days a week" and, therefore, it was "patently improper" for the ALJ to weigh that evidence more highly than Dr. Weisberg's medical opinion. (D.I. 9-1 14-16) The Court disagrees; there was substantial evidence to support the ALJ's analysis. The evidence relied upon by the ALJ – such as Lewis' ability to drive, to concentrate, to socialize, and to care for himself – all bear upon Lewis' functional capacity in view of his bipolar disorder and depression. *See* 20 C.F.R. § 404.1529 (providing that ALJ is to "consider ***all of [claimant's] statements about [claimant's] symptoms*** . . . and any description [claimant's] medical sources ***or nonmedical sources*** may provide about how the symptoms affect [claimant's] ***activities of daily living*** and [claimant's] ability to work") (emphasis added). The ALJ properly weighed this evidence, as well as considering Dr. Weisberg's medical opinions. *See id.* § 404.1527(b) (providing that ALJ is to "consider the medical opinions in [claimant's] case ***together with the rest of the relevant evidence*** we receive") (emphasis added).

Lewis' argument that "Dr. Weisberg's opinion is not inconsistent with the underlying evidence" also misses the mark. (D.I. 9-1 at 16-19) Lewis contends that, for the purposes of 20 CFR § 404.1527(c), "perfect consistency simply is not required," that "a claimant's burden under the [Social Security] Act requires only that [he] prove any asserted fact by a preponderance of the evidence," and when the evidence is "[v]iewed in this (correct light), the record provides ample support for Dr. Weisberg's opinion." (D.I. 12 at 2) In line with this reasoning, Lewis recites facts that Lewis contends are consistent with Dr. Weisberg's opinions. (*See* D.I. 9-1 at

12

16-18) (Dr. Weisberg describing Lewis as "immobilized," having "[less] desire to do things," feeling "like an outsider in his family," "losing his house," appearing "slightly disheveled," and "not doing much around the house but still doing a little")

The Court is not evaluating whether Lewis is disabled *de novo*. At this stage, the issue for the Court is whether the ALJ's weighing of medical opinions and subsequent RFC determination are supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91. Although Lewis has identified some evidence consistent with Dr. Weisberg's opinion, it does not "overwhelm[]" the evidence relied on by the ALJ; nor has he shown that the ALJ "ignore[d] or fail[ed] to resolve" any conflicts between Lewis' evidence and the evidence relied on by the ALJ. *Kent*, 710 F.2d at 114. Therefore, Lewis' arguments fail.[3]

For these reasons, the Court concludes that the ALJ had substantial evidence for giving Dr. Weisberg's opinions little weight. The Court further concludes that the ALJ's RFC determination is supported by substantial evidence. Therefore, the ALJ's treatment of Dr. Weisberg's opinions does not compel a reversal and remand.

**B.    Lewis' Work History**

In making a disability determination, an ALJ is to consider "all of the evidence presented," including information about the claimant's "prior work record." 20 CFR

---

[3] As Defendant summarizes, the record also contains evaluations by non-treating physicians:

> Charlene Tucker-Okine, Ph.D., a state agency psychologist, reviewed the medical and other evidence of record in January 2014 and concluded that Plaintiff would be able to handle a simple work routine (Tr. 88-91). Christopher King, Psy.D., also a state agency psychologist, reviewed the evidence of record in August 2014 and affirmed Dr. Tucker-Okine's opinion (Tr. 102-04).

(D.I. 11 at 8)

§ 404.1529(c)(3). Lewis argues that the ALJ's "credibility finding" is flawed because it "fails to even acknowledge [Lewis'] strong work history." (D.I. 9-1 at 19) In particular, Lewis points out that he "accrued covered earnings for *all but 2* quarters out of a possible 104 quarters between 1986 and 2011 (an almost uninterrupted 25-year work history)." (*Id.*) From this, Lewis argues that "(1) the ALJ was clearly required to consider this important fact, and (2) never did." (*Id.* at 20)

Lewis' argument lacks merit. As the Commissioner points out, it is clear from the record that the ALJ was aware of and considered Lewis' work history. (Tr. 51 (noting Lewis' previous work as plumber); Tr. 65-67 (reviewing Lewis' work history and eliciting testimony from Lewis that he had been "in the plumbing industry since 1986"); Tr. 50 (noting consideration of "the evidence in the case record" in evaluating "the intensity and persistence of the symptoms alleged by the claimant")) In the circumstances of this case, the ALJ did not need specifically to discuss the length of Lewis' work history in the written decision. *See, e.g., Corley v. Barnhart*, 102 F. App'x 752, 754 (3d Cir. 2004) (holding that ALJ did not err by "failing to factor into the assessment" claimant's long work history because claimant did not show "evidence of severe impairments or attempt[s] to return to work"); *Thompson v. Astrue*, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010) (rejecting argument that ALJ erred by "fail[ing] to consider" claimant's work record, adding that even "exemplary" work history was "insufficient to overcome the substantial evidence supporting the ALJ's credibility determination"); *Skrbin v. Colvin*, 2016 WL 5390140, at *4 (W.D. Pa. Sept. 26, 2016) (rejecting argument that ALJ erred by failing to consider claimant's 26-year work history, and explaining that "[a]lthough the ALJ did not specifically note that plaintiff had a lengthy work history, it is clear from her decision that she considered the record *as a whole* in assessing plaintiff's credibility").

## IV. CONCLUSION

Given the substantial evidence supporting the ALJ's findings, the Court concludes that neither an award of benefits nor a remand is warranted. Accordingly, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. An appropriate order follows.